In the Matter of the Estate of FLORINE H. SICHER, Deceased.

Surrogate's Court, New York County, August 10, 1943.

*Meighan & Necarsulmer* for Central Hanover Bank and Trust Company and others, executors and trustees, petitioners.

*Rathbone, Perry, Kelley & Drye* for Central Hanover Bank and Trust Company as trustee under indenture of trust, respondent.

*Achilles H. Kohn* for William D. Sicher and another, individually and as trustees under indenture of trust, respondents.

*James N. Vaughan,* special guardian for Edmund A. Rosenthal, 3d, and another, infants, and for unknown distributees.

DELEHANTY, S. Deceased's will says in part: " I direct that all inheritance, succession, transfer and estate taxes that may be imposed upon or become due with respect to any property or interest passing under this will, any codicil thereto, any deed of trust, or any other taxable transfer, whether heretofore or hereafter made by me, shall be paid out of my general estate, subject, nevertheless, to the provisions in any such deed of trust contained relating to the payment of such taxes."

Under the quoted text questions arise respecting the incidence of estate taxes imposed by reason of the inclusion in the tax estate of deceased of the cash surrender value of policies of insurance on the life of the *husband* of deceased which were owned by deceased and were placed by her in a revocable trust during the year 1934. Like question is raised because of the inclusion in the tax estate of deceased of an item of $45,000.

The taxes on the cash surrender value of the insurance must be paid from the general or true estate of deceased unless the text of the insurance trust indenture provides otherwise. That indenture recites the intent of the grantor " to create a trust of the proceeds of certain policies of insurance ". It then provides for the deposit with the trustees of the policies of insurance and it designates the trustees " as the sole beneficiaries thereof and of the proceeds thereof, which, together with such other

policies and the proceeds thereof as may hereafter be made subject to the terms hereof, are hereinafter collectively called ' the trust estate ' ''. The identure then provides that upon the death of the insured (deceased's husband) the trustees should collect the net amount of the policies less loans or other liens and then provides: '' (b) Insofar as the trust. estate shall be sufficient therefor, the trustees shall upon receipt thereof, pay all the necessary taxes, expenses and other charges incurred in connection therewith.'' It is upon that latter text that the special guardian predicates the argument ·that deceased had made provision for inheritance taxes by the deed of trust and thus relieved the true estate from the charge for inheritance taxes on the cash surrender value of the policies of insurance.

The court .is of the view that the provision just quoted from the trust indenture does not relate to inheritance taxes on the estate of deceased. The nature of the *inter vivos* plan was such that collection of any money by the trustees must of necessity await the death of the husband of deceased. He in fact survived deceased and the possibility of that survival was obvious at the time the insurance trust indenture was executed. It seems to the court that the text quoted from that trust indenture had to do only with such taxes, expenses and other charges as were incidental to the receipt of the moneys under the policies. The text says '' upon receipt thereof '' and such phrase must mean the receipt of the *proceeds* of the policies rather than the receipt of the policies. Mere receipt of the policies would not put the trustees in possession of cash with which to pay taxes, expenses or other charges. They would have no cash until the *insured* died. Having that view of the insurance trust indenture the court holds that it contains no provisions respecting the payment of inheritance taxes and so holds that the tax arising from the inclusion in the tax estate of deceased of the cash surrender value of the policies must be paid out of the true estate assets.

In respect of the fund of $45,000 included in the tax estate the record furnishes no intelligible explanation why the sum should have been included in the tax estate at all. Its inclusion appears to be another evidence of arbitrary and irrational conduct of taxing officers of the government in forcing citizens to pay taxes in excess of the amounts actually due because some bureaucrat in the revenue department insists on the inclusion of an arbitrary addition to the taxable property of deceased though unable to advance any defensible theory for its inclusion. Here it would seem that the taxing authorities attempted an utterly indefensible inclusion in the tax estate of deceased of a fund put

in trust by her in 1921. That trust ended in 1935 and the beneficiaries of the principal thereupon created other trusts with what they received. In respect of these further trusts deceased had certain rights. There is no basis upon which $45,000 can be asserted to be the measure of those rights. The sum of $45,000 included in the tax estate of deceased appears to be merely the lowest figure at which the estate representatives could compromise the indefensible demands of the revenue authorities. It appears to have been included by the assent of the estate representatives in surrender of their legal rights because of fear of attempted larger exactions and of fear of the cost of the estate assets of insistence upon the estate's legal rights. Nowhere in the assessment notices or in the computations of the taxing authorities is any description given of the property taxed which explains the figure $45,000. Nor is there given any statement of the source of that fund. No combination of calculations on any theory can produce a sum of $45,000 as a figure representing any property value subject to tax by reason of deceased's death. It stands on this record as the basis merely to an extortion of excessive taxes from the estate. In these circumstances the court cannot find that it is related to any deed of trust of deceased at all. That of 1921 contains no language charging the property affected thereby with the tax. That of 1935 was not deceased's indenture and so is not within the terms of the will. The ultimate consequence is that the true estate must pay the exaction.

Question has been raised concerning payments to tax counsel. The broad powers granted to the executors under the will of deceased make their action in respect of these charges conclusive on the parties and the court and so the payments are approved.

The personal claims of the deceased executor and of the corporate executor are allowed as scheduled.

The segregation of trust capitals recommended by the special guardian has been put into effect. The trusts are to be operated independently so that the interests of the respective parties will at all times be subject to ascertainment.

The disposition of the commissions referred to in the supplemental report of the special guardian is approved by the court. By reason of the waivers only one and one-half full commissions are payable. In the circumstances shown in the record a full commission will be allowed to the corporate executor and the remaining one half will be allowed to the estate of the deceased executor.

Submit, on notice, decree settling the account accordingly.